* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On August 25, 2003, an employment relationship existed between plaintiff and defendant-employer. On that date, defendant-employer regularly employed three or more employees in North Carolina.
2. St. Paul Travelers Insurance Company was the carrier on the risk.
3. On the date of injury, defendant-employer's principal place of business and plaintiff's principal place of employment were outside the State of North Carolina.
4. From July 14, 2003 through August 24, 2003, a period of six weeks, plaintiff earned wages totaling $5,071.00. During this same period, defendant-employer made payments to plaintiff for per diem expenses totaling $1,920.00. The parties disagree as to whether the payments defendant-employer made to plaintiff for per diem expenses should be included in the calculation of plaintiff's average weekly wage.
5. Plaintiff last worked for defendant-employer on September 3, 2003.
6. Defendants admitted liability for plaintiff's injury under the workers' compensation laws of the State of Georgia. Defendants have paid plaintiff compensation under the workers' compensation laws of the State of Georgia at the rate of $425.00 per week beginning on September 23, 2003 and continuing through the present.
7. The following documentary exhibits are stipulated into evidence by the parties: all of plaintiff's medical, employment and wage records, all Industrial Commission Forms, and forms, records and printouts of payments made regarding plaintiff's claim for workers' compensation under the laws of the State of Georgia.
8. The following were admitted into evidence at the Deputy Commissioner's hearing:
 a. Stipulated Exhibit No. 1 — I.C. Forms, employment and wage records, Medical Records, State of Georgia documents.
b. Defendant's Exhibit No. 1 — video footage.
9. The issue before the Commission is whether the Industrial Commission has jurisdiction over plaintiff's workers' compensation claim for injury sustained in another state.
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 34 years old. Plaintiff graduated from high school and has two years of general college education, but did not graduate from college and does not hold any special licenses or certificates.
2. After leaving college, plaintiff worked primarily in the construction trades. His employment history included many kinds of construction and renovation work. Plaintiff had experience supervising subcontractors and also operated his own subcontracting business. However, even when supervising others and operating his own subcontracting business, plaintiff performed much of the "hands-on" work. Such work regularly required heavy lifting, climbing, crawling, bending, and stooping.
3. In the summer of 2003, plaintiff was a self-employed subcontractor and resided in Wendell, North Carolina. He was married and had three dependents other than his wife. Plaintiff decided to seek employment that provided insurance and other benefits that he was unable to obtain through self-employment.
4. On an Internet web page, plaintiff learned that defendant-employer was hiring workers for construction of a Target store in Wake County, North Carolina. In June 2003, plaintiff contacted defendant-employer to inquire about positions at the Wake County jobsite. Plaintiff's wife, Tiffany Greene, also contacted defendant-employer to inquire about employment opportunities.
5. Plaintiff and his wife spoke to Jennifer Robbins, who was located in Iowa and was responsible for hiring defendant-employer's employees. Ms. Robbins informed plaintiff that all of the available positions in Wake County were filled, but she explained that there were employment opportunities available at the construction of a Target store in Athens, Georgia.
6. Thereafter, plaintiff and Ms. Robbins continued to discuss plaintiff becoming employed by defendant-employer at the Athens job site. During one of their telephone conversations while plaintiff was still in North Carolina, Ms. Robbins offered plaintiff employment as an assistant superintendent in Athens. Plaintiff accepted the offer of employment. Ms. Robbins and plaintiff agreed that plaintiff would earn $22.00 per hour, plus overtime; that he would receive a weekly allowance for lodging and meals in the amount of $320.00; that he would be reimbursed for travel expenses to the job site; and that he was to report to work at 7:30 a.m. on July 14, 2003 and report to his supervisor, John. Based upon these facts, the Commission finds that an oral employment contract was made between plaintiff and defendant-employer prior to plaintiff's arrival on the job site in Athens.
7. Relying on the employment contract, plaintiff drove from Wendell, North Carolina to Athens, Georgia on July 12, 2003. On July 14, 2003, plaintiff went to the job site as instructed. He arrived at the site at approximately 7:30 a.m. and located his supervisor. After introductions, plaintiff's supervisor showed him what work needed to be done and directed plaintiff to begin working. At approximately 10:00 a.m., plaintiff's supervisor came to him and asked him to complete an employment application and Form W-4. Plaintiff completed the forms and returned to work. At approximately 10:00 a.m., plaintiff's supervisor faxed his employment application and Form W-4 to defendant-employer's headquarters in Iowa.
8. Defendant-employer reimbursed plaintiff for his travel from his home in Wendell, North Carolina to the job site in Athens, Georgia on July 12, 2003. Plaintiff worked for defendant-employer installing shelving for approximately four hours before defendant-employer received plaintiff's employment application and Form W-4 in its Iowa offices. Defendant paid plaintiff for the work he performed on July 14, 2003, including his work prior to his completing the Form W-4 and employment application.
9. The last act necessary to make plaintiff's contract of employment with defendant-employer occurred during a telephone conversation between plaintiff and Ms. Robbins while plaintiff was at home in Wendell, North Carolina. During that conversation, Ms. Robbins offered plaintiff a position as assistant superintendent and he accepted her offer. The Commission finds plaintiff's testimony concerning the employment contract credible and therefore gives no weight to Ms. Robbins' testimony that no job offer was made.
10. On August 25, 2003, plaintiff was performing his assigned duties for defendant-employer when he observed one of the day laborers committing a safety violation. The day laborer left ceiling tiles stacked on top of a stepladder and plaintiff climbed the ladder to retrieve the ceiling tiles. When he climbed down the ladder, plaintiff missed three rungs of the ladder and fell, landing stiff-legged on the concrete floor.
11. Following the incident, plaintiff began to experience back and leg pain. He reported the incident to his supervisor within 30 days of August 25, 2003. Plaintiff worked in pain from August 25, 2003 until his last day of work on September 3, 2003. Although he continued working, he did not perform his usual duties and he received assistance from co-workers. Plaintiff had to sit down more often and take frequent breaks. In early August 2003, plaintiff brought his wife and children with him to the job site, in anticipation of traveling with his family when the job was complete. After August 25, 2003, however, plaintiff's wife helped him put on his socks and shoes so that he could continue to work.
12. After returning to his home in North Carolina, plaintiff's wife insisted that plaintiff seek medical treatment. Plaintiff sought treatment from his family physician the day after he returned from Georgia. Plaintiff's physician ordered a lumbar MRI, which was performed on October 4, 2003. The MRI showed "an acute L4-5, right herniated disc with foraminal stenosis with inferior migration." Plaintiff's family physician referred him to Dr. Pavan Yerramsetty, who treated plaintiff conservatively, administering epidural steroid injections. The conservative treatment did not provide plaintiff with significant relief from his symptoms and Dr. Yerramsetty referred plaintiff to Dr. Chad Prusmack.
13. Dr. Prusmack first evaluated plaintiff on February 10, 2004. Based on his examination, Dr. Prusmack recommended a right, minimally invasive microdiskectomy at L4-5 that was performed on February 25, 2004. Dr. Prusmack then referred plaintiff back to Dr. Yerramsetty for conservative treatment; however, plaintiff's symptoms did not improve. Dr. Prusmack ordered a discogram, which reproduced plaintiff's pain at L3-4 and L4-5, and sham injections were negative. Based on the discogram results, Dr. Prusmack recommended that plaintiff undergo a minimally invasive two-level fusion. At his deposition, Dr. Prusmack testified that to a reasonable degree of medical certainty plaintiff's August 25, 2003 injury significantly contributed to the lumbar conditions for which he treated plaintiff. Dr. Prusmack testified that the type of accident plaintiff had could lead to a herniated disk, actual back pain, and a discogenic back pain syndrome. Dr. Prusmack testified that as of the last time he saw plaintiff in August 2004, he did not feel that plaintiff was capable of doing any type of work.
14. Based on the medical evidence, the Full Commission finds that plaintiff's herniated disc at L4-5, his discogenic pain, and his need for minimally invasive fusion surgery were caused or significantly contributed to by the incident on August 25, 2003.
15. As of the date of the Deputy Commissioner's hearing, plaintiff had not undergone the recommended surgery because defendant-carrier refused to authorize the procedure.
16. Plaintiff will benefit from undergoing the minimally invasive fusion surgery recommended by Dr. Prusmack. Dr. Prusmack has referred plaintiff to Dr. Leonard Nelson for the recommended surgery.
17. As a result of the incident on August 25, 2003, plaintiff became incapable of earning wages in any employment beginning on September 4, 2003 and continuing through the date of the Deputy Commissioner's hearing.
18. Prior to his injury, plaintiff was employed by defendant-employer for six weeks. During those six weeks, plaintiff earned hourly wages totaling $5,071.00. Additionally, defendant-employer paid plaintiff allowances for food and lodging that totaled $1,920.00. The allowances were not based on actual expenses for lodging or meals and plaintiff was not required to submit receipts or other documentation in order to receive allowances. Defendant-employer paid plaintiff the weekly allowance of $320.00 regardless of whether he in fact had any expenses for lodging or meals. Defendant-employer allowed plaintiff complete discretion of how to spend the allowances, if at all. The allowances paid to plaintiff were, therefore, in lieu of wages.
19. During the six weeks prior to his injury, plaintiff's earnings totaled $6,991.00. Calculating plaintiff's average weekly wage by dividing his earnings by the number of weeks and parts thereof during which he earned wages yields results that are fair and just to both parties.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. N.C. Gen. Stat. § 97-36 provides that North Carolina has jurisdiction over injuries occurring outside the state if the contract of employment was made in North Carolina, if the employer's principal place of business is in North Carolina, or if the employee's principal place of employment is within North Carolina. The first part of the statute is the only applicable provision to the facts of this case.
2. In this case, plaintiff's contract of employment with defendant-employer was made in North Carolina. Murray v.Ahlstrom Indus. Holdings, Inc., 131 N.C. App. 294,506 S.E.2d 724 (1998). Defendant-employer's offer of employment was made by telephone to plaintiff at his home in North Carolina and was accepted by plaintiff in the telephone call. The acceptance and offer constituted the final act necessary to make the employment contract a binding obligation. The paperwork subsequently completed by plaintiff mid-day during his first workday was "more of a consummation of the employment relationship than the `last act' required to make it a binding obligation." Id. at 297,506 S.E.2d at 727. Thus, the Commission has jurisdiction over plaintiff's workers' compensation claim. N.C. Gen. Stat. § 97-36.
3. On August 25, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
4. Plaintiff's average weekly wage, including allowances, is $1,165.17, which yields the maximum compensation rate for 2003 of $674.00 per week. N.C. Gen. Stat. § 97-2(5).
5. As a result of his injury on August 25, 2003, plaintiff is entitled to compensation for temporary total disability at the rate of $674.00 per week beginning September 4, 2003 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injury, including the minimally invasive fusion surgery recommended by Dr. Prusmack, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§97-19; 97-25.
7. Defendants are entitled to offset the compensation for temporary total disability by the amount of disability compensation plaintiff received from defendants under the laws of the State of Georgia. N.C. Gen. Stat. § 97-36.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation for temporary total disability at the rate of $674.00 per week beginning September 4, 2003 and continuing until further order of the Commission. To the extent that this amount has accrued, it shall be paid in a lump sum, subject to the offset due defendants in paragraph 3 below and the attorney's fee approved in paragraph 4 below.
2. Defendants shall pay plaintiff for all medical expenses incurred or to be incurred as a result of his compensable injury, including the minimally invasive fusion surgery recommended by Dr. Prusmack, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or tend to lessen plaintiff's period of disability.
3. Defendants shall receive an offset against the accrued compensation due plaintiff under paragraph 1 of this Award in an amount equal to the amount of compensation paid to plaintiff under the workers' compensation laws of the State of Georgia.
4. A reasonable attorney's fee equal to 20% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's attorney and shall be paid as follows: 20% of the accrued compensation due plaintiff, after the offset due defendants, shall be deducted from that amount and be paid directly to plaintiff's attorney. Thereafter, defendants shall pay every fifth compensation payment due plaintiff to plaintiff's counsel as an attorney's fee.
5. Defendants shall pay the costs.
This the 10th day of July 2006.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER